## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEMOCRACY RISING PA** and **TIM POTTS,** | : | **CIVIL ACTION NO. 1:07-CV-0860** |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiffs** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN R. CELLUCI, CHARLES A. CLEMENT, JR., CHARLES J. CUNNINGHAM, III, CECILIA GRIFFEN GOLDEN, PATRICK JUDGE, EDWARD R. KLETT, G. CRAIG LORD, CHARLENE R. MCABEE, CYNTHIA N. MCCORMICK, JACK A. PANNELLA, CAROLYN W. RUDNITSKY, JAMES R. WEAVER, and PAUL J. KILLION,** | : : : : : : : : : : : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

This is a First Amendment challenge to Canon 7B(1)(c) of the Pennsylvania

Code of Judicial Conduct, which regulates the campaign activitiy of candidates for

judicial office.  Plaintiffs Democracy Rising PA and Tim Potts (collectively

"plaintiffs") seek declaratory and injunctive relief to remedy prospective harms,

and compensatory relief to rectify prior constitutional injuries allegedly caused by

the canon.  Defendants are members of the Pennsylvania Judicial Conduct Board[1]

---

[1] The Judicial Conduct Board defendants are:  John R. Celluci, Charles A. Clement, Jr., Charles J. Cunningham, III, Cecilia Griffen Golden, Patrick Judge, Edward R. Klett, G. Craig Lord, Charlene R. McAbee, Cynthia N. McCormick, Jack A. Pannella, Carolyn W. Rudnitsky, and James R. Weaver.

and the Pennsylvania Office of Disciplinary Counsel[2] (collectively "defendants").

Presently before the court is defendants' motion to dismiss.  (Doc. 42.)  For the

reasons that follow, defendants' motion will be granted.

## I.   __Statement of Facts__[3]

In Pennsylvania, candidates for judicial office are selected in the first

instance through a partisan primary process, which is followed by a general

election.  (See Doc. 41 ¶ 2.)  Once elected, judges stand for periodic "retention,"

wherein voters simply decide whether to retain the judge, or to remove him or her

from office.  (Id.)  The campaign conduct of candidates for judicial office is governed

by the Pennsylvania Code of Judicial Conduct ("the Code"), a body of regulations

promulgated by the Pennsylvania Supreme Court.  See PA. CONST. art. V, § 10.

Canon 7B(1)(c) of the Code prohibits judicial candidates from "mak[ing] statements

that commit the candidate with respect to cases, controversies or issues that are

likely to come before the court."  PA. CODE OF JUDICIAL CONDUCT Canon 7B(1)(c)

---

[2] Defendant Paul J. Killion is Chief Disciplinary Counsel of the Office of
Disciplinary Counsel, and the lone defendant named therefrom.

[3] In accordance with the standard of review for a motion to dismiss under
Rule 12(b)(1) and Rule 12(b)(6), the court will present the facts as alleged in the
complaint, as well as the record of the case and matters of public record.  See infra
Part II.

(2009).  In the parlance of First Amendment election law, this clause is often

referred to as a "commits clause."[4]

Defendants are responsible for ensuring that both judges and lawyer-

candidates comply with the Code.  The Pennsylvania Board of Judicial Conduct

("the Board") receives and investigates complaints regarding the campaign activity

---

[4] Challenges to state judicial ethics codes have increased since the United States Supreme Court's 2002 decision in Republican Party of Minnesota v. White, 536 U.S. 765 (2002), which struck down a Minnesota ethics provision prohibiting a candidate from "announcing" his or her views on a contested legal issue.  There have been many subsequent challenges to identical or nearly identical versions of the "commits clause."  See, e.g., Kan. Judicial Review v. Stout, 519 F.3d 1107, 1112 (10th Cir. 2008) (challenging the "Commits Clause" of the Kansas Code of Judicial Conduct, which prohibited candidates from making "statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court"); Ind. Right to Life, Inc. v. Sprau, 507 F.3d 545 (7th Cir. 2007) (challenging Indiana Code of Judicial Conduct's "commitments clause," which restricts a candidate's ability to "make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court"); Ala. Right to Life v. Feldman, 504 F.3d 840 (9th Cir. 2007) (challenging provision of Alaska Code of Judicial Conduct that prohibits "statements that commit or appear to commit a candidate to a particular view or decision regarding a case likely to come before the court"); N.D. Family Alliance, Inc. v. Bader, 361 F. Supp. 2d 1021, 1024 (D.N.D. 2005) (challenging North Dakota provision that prohibted judicial candidates from making "statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court"); Family Trust Found. of Ky. v. Wolnitzek, 345 F. Supp. 2d 672 (E.D. Ky. 2004) (challenging Kentucky Code of Judicial Conduct provision prohibiting candidates from making "statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court").  Pennsylvania's Code of Judicial Conduct has also been challenged on multiple occasions since 2002.  See infra Part I; see also Pa. Family Inst. v. Black, 489 F.3d 156 (3d Cir. 2007) (challenging several provisions of the Pennsylvania Code of Judicial Conduct, including Canon 7B(1)(c)).

of sitting judges seeking retention.[5]  (See Doc. 41 ¶ 5.)  If the Board determines that there is probable cause to pursue formal disciplinary action against a judge, it may file charges and prosecute the matter before the Pennsylvania Court of Judicial Discipline.  (See id.)  Lawyers seeking judicial office must also adhere to Canon 7 of the Code.  (See id. ¶ 6); see also PA. RULES OF PROF'L CONDUCT R. 8.2(b) (2009). Failure to do so may result in prosecution by the Pennsylvania Office of Disciplinary Counsel ("ODC").  (See Doc. 41 ¶ 7); see also PA. RULES OF DISCIPLINARY ENFORCEMENT R. 207(b) (2009).  It is in the context of this regulatory framework that the court approaches the facts underlying the instant dispute.

Democracy Rising PA ("Democracy Rising") is a nonpartisan organization whose stated mission is to enhance the transparency of Pennsylvania's elected government.  (Doc. 41 ¶ 19.)  Tim Potts ("Potts") is president of the organization.

---

[5] The Board derives this authority from Article V, § 18 of the Pennsylvania Constitution.

(Id. ¶ 20.)  Between January and March of 2007, plaintiffs designed[6] and distributed

a questionnaire to each candidate for judicial election and retention in the

Commonwealth.  (Id. ¶¶ 34-35.)  The questionnaire contained over thirty inquiries

designed to elicit each candidate's "general views on reforming the state courts."

(Id. ¶¶ 38, 46.)  Topics of interrogation included "(a) transparency in court

governance; (b) acknowledgment of, and deference to, the role of the legislature; (c)

regularity in judicial decision-making; and (d) strict enforcement of constitutional

limits on the process of government."  (Id. ¶ 41.)  Additionally, the questionnaire

---

[6] Plaintiffs bore all expenses associated with production and distribution of
the questionnaires.  The complaint itemizes Democracy Rising's expenses as
follows: "(a) the printing and use of letterheads; (b) the printing of letters to judges
and judicial candidates; (c) the printing of the questionnaires; (d) the printing,
purchase and use of envelopes to send the questionnaires to judges and judicial
candidates; and (e) the United States Postal Service postage via certified mail to
send questionnaires to every judge seeking retention in the 2007 general election
and judicial candidate seeking their party's nomination in the 2007 primary
election."  (Doc. 41 ¶ 36.)  Potts's expenses are described as follows: those incurred
to "(a) design the questionnaire; (b) draft questions to be included on [the]
questionnaire; (c) consult with third parties on the questions to be included on the
questionnaire; (d) secure the printing of letterheads, envelopes, and return
envelopes for the sending and receiving of questionnaires to and from every judge
seeking retention in the 2007 general election and judicial candidate seeking their
party's nomination in the 2007 primary election; (e) determine the names and
addresses of every judge seeking retention in the 2007 general election and judicial
candidate seeking their party's nomination in the 2007 primary election; (f) design
the mailing list for the questionnaire; (g) print and affix mailing labels to
questionnaire envelopes; (h) prepare the questionnaires for mailing; (i) secure
postage for the sending of the questionnaires; (j) send the questionnaires via
certified mail; (k) answer questions from judges and judicial candidates who
received the questionnaire; (l) answer questions from the media related to the
questionnaire; (m) receive and review questionnaires and responses from judges
and judicial candidates; and (n) manage and post questionnaire responses on
Plaintiff Democracy Rising PA's website."  (Id. ¶ 37.)

included the following disclaimer:  "[Y]our answers to these general questions are not intended to bind your decision in any particular case where a specific set of facts may lead to a judgment different from the views you express here."  (Id. ¶ 39.) Plaintiffs nonetheless intended to publicize the candidates' responses by posting them on Democracy Rising's website.  (Id. ¶ 8.)

When the questionnaires were distributed in 2007, Canon 7B(1)(c) prohibited judicial candidates from "mak[ing] statements that commit *or appear to commit* the candidate with respect to cases, controversies or issues that are likely to come before the court."  (Id. ¶ 3 (emphasis added)).  Plaintiffs assert that several candidates "indicated a desire and willingness to answer [the] questionnaire but specifically stated they were prohibited from answering . . . because of the [commits clause]."[7]  (Id. ¶ 47.)  The written responses of six judicial candidates are proffered in support of this assertion.  Relevant portions of these responses are excerpted below:

---

[7] Plaintiffs claim that the 2007 version of the commits clause "contained two independent and interdependent clauses that . . . individually and in combination impair[ed] Plaintiffs' First Amendment rights: (1) the 'appear to commit' clause . . . ; and (2) the 'cases, controversies or issues that are likely to come before the court' clause . . . ."  (Doc. 41 ¶ 4.)  Plaintiffs proffer no substantive rationale for dividing the clause in this manner.  Each count in the complaint that attacks the 'appear to commit' clause also attacks the 'issues clause' in precisely the same manner.  Thus, the proposed division appears to be entirely superfluous.  Plaintiffs' characterization of the clause is likely an effort to differentiate the commits clause challenged in the instant matter with the litigation brought before our sister court in the Eastern District of Pennsylvania, see Pa. Family Institute v. Black, 521 F. Supp. 2d 351 (E.D. Pa. 2007); see also infra.  The court declines plaintiffs' proposed division and will analyze the commits clause in its entirety rather than as "two independent and interdependent clauses."

I believe that the Pennsylvania Code of Judicial Conduct prohibits a judicial candidate from answering specific questions which commit, *or appear to commit*, the candidate to a specific position with regard to these subjects, or any subject matter whatsoever. . . . I believe the spirit of the Code of Judicial Conduct also prohibits a candidate from expressing an opinion which would lead to speculation, or the appearance, that the candidate has formed any opinion before engaging in the full judicial process. . . .

Canon 7 of the Pennsylvania Code of Judicial Conduct prohibits a judicial candidate from making statements which commit *or appear to commit* a candidate to a position on an issue which may come before the Court. As such, there are certain questions on your questionnaire which I must decline to answer. . . .

I believe that Canon 7 of the Pennsylvania Code of Judicial Conduct prohibits a judicial candidate from making statements which commit *or appear to commit* a candidate to a position. . . . Any answer I may give to the specific questions posed may lead to speculation or the appearance that I have a pre-formed opinion on such matters. Therefore, I must respectfully decline to provide answers to the questionnaire submitted. . . .

I must respectfully decline to provide answers to the questionnaire you have submitted. This decision is based on Canon 7 of the Pennsylvania Code of Judicial Conduct, which generally outlines prohibitions for judges as well as candidates for judicial office. Specifically, part B(1)(c) states that a candidate for a judicial office "should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office;" or "make statements that commit *or appear to commit* the candidate with respect to cases, controversies or issues that are likely to come before the court . . . ."

The question is beyond the scope of what is permissible for a judicial candidate to answer. . . .

> In observance of [Canon 7], which is valid law in this Commonwealth, I decline to state my opinion with respect to any controverted legal issues which may come before the Pennsylvania Supreme Court, as this would give the impression that I am pre-judging cases which may come before the Court.  Furthermore, I would point out that public statements by judges, offering opinions on disputed issues which may come before the Supreme Court, will only open the door to recusal motions by parties seeking to have those judges disqualified and removed from hearing those cases. . . .

(Id. ¶¶ 48-53 (emphases added)).[8]

Based on these candidates' unwillingness to respond, plaintiffs sought a preliminary injunction on May 10, 2007—five days prior to the Pennsylvania primary election—prohibiting defendants from enforcing the commits clause against any judicial candidate responding to Democracy Rising's questionnaire. (See Doc. 1 at 23.)  The court held a hearing on the preliminary injunction on May 14, 2007, but before reaching a disposition, our sister court in the Eastern District of Pennsylvania preliminarily enjoined the Board and ODC from enforcing Canon 7B(1)(c).[9]  See Pa. Family Inst., Inc. v. Celluci (PFI I), 489 F. Supp. 2d 447, 460 (E.D. Pa. 2007).  Because the preliminary injunction concerned the same ethics provision

---

[8] The six quoted responses belong to Lucy Longo, Chuck Pascal, Cindy Dunlap Hinkle, Gary Gilman, Jackie Shogan, and Debra Todd, respectively.  (Doc. 41 ¶¶ 48-53.)

[9] The Eastern District issued the preliminary injunction on May 14, 2007. Plaintiffs in that matter included the Pennsylvania Family Institute, "a nonprofit, nonpartisan, research and education organization," as well as six candidates for judicial office in Lancaster County, Pennsylvania.  See Pa. Family Inst., Inc. v. Celluci (PFI I), 489 F. Supp. 2d 447, 449 (E.D. Pa. 2007).

challenged by the above-captioned plaintiffs, this court stayed the instant matter in order to avoid duplicative litigation and to promote judicial economy.  (See Doc. 19.)

On October 16, 2007, the Eastern District issued a ruling granting the defendants' motion for summary judgment and vacating the preliminary injunction. See Pa. Family Inst., Inc. v. Celucci (PFI II), 521 F. Supp. 2d 351, 355 (E.D. Pa. 2007). The PFI II court found that Canon 7B(1)(c) was constitutional both facially and as-applied, but it did so by reading the commits clause narrowly and deleting the "appear to commit" language therefrom.  According to the court, "the phrase 'or appear to commit' makes the commits clause unconstitutionally vague;'" by deleting the language, "the clause's core prohibition [remains] intact, [and] only the standard by which violations will be determined" is clarified.  Id. at 380.  PFI II thus read the narrowly-construed canon to state that "[c]andidates . . . for a judicial office . . . should not . . . make statements that commit the candidate with respect to cases, controversies or issues."  Id.  Under this construction, "the clause only prohibits a judicial candidate from pledging, promising, or committing to decide an issue or a case in a particular way once elected judge."  Id. (internal citation and quotation marks omitted).

On March 17, 2008, the Pennsylvania Supreme Court adopted PFI II's narrow construction and deleted the constitutionally questionable "appear to commit" language.  The revised Canon 7B(1)(c), which reflects the canon's current incarnation, reads: "Candidates, including an incumbent judge, for a judicial office . . . should not make statements that commit the candidate with respect to

9

cases, controversies or issues that are likely to come before the court; . . . ." PA.
CODE OF JUDICIAL CONDUCT Canon 7B(1)(c) (2009) (amended Mar. 17, 2008).
Plaintiffs argue that this revision is substantively meaningless and merely
constitutes an attempt to "maintain an ambiguous ethics rule to discourage judicial
candidates from answering questions during political campaigns." (Doc. 41 at 4.)

On April 7, 2008, plaintiffs moved to lift the stay and reopen the above-
captioned matter. (See Doc. 36.) The court granted the motion and plaintiffs
thereafter filed a second amended complaint. (Doc. 41.) Plaintiffs argue that in its
amended form, Canon 7B(1)(c) remains unconstitutionally vague and overbroad,
and thus impairs the speech of candidates for judicial office, as well as citizens
desirous of collecting and publishing information on, and criticizing the opinions
and philosophy of, judicial candidates. (See, e.g., id. ¶¶ 56, 59, 66.) Defendants filed
a motion to dismiss on June 6, 2008, questioning the justiciability of plaintiffs'
contentions and arguing that the complaint fails to state a claim upon which relief

can be granted.[10]  (See Doc. 42.)  The motion has been fully briefed and is ripe for

disposition.

## II.  **Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a

complaint for "lack of subject-matter jurisdiction."  FED. R. CIV. P. 12(b)(1).  A

motion to dismiss under Rule 12(b)(1) therefore challenges the power of a federal

court to hear a claim or case.  See Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d

Cir. 2006).  In the face of a 12(b)(1) motion, the plaintiff has the burden to "convince

the court it has jurisdiction."  Gould Elecs., Inc. v. United States, 220 F.3d 169, 178

(3d Cir. 2000); see also Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.

---

[10] A motion to dismiss attacking a claim's justiciability is typically raised
pursuant to Rule 12(b)(1).  See Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181,
187-88 (3d Cir. 2006) (standing); Maio v. Aetna, Inc., 221 F.3d 472, 481 n.7 (3d Cir.
2000) (same); Ruocchio v. United Transp. Union, Local 60, 181 F.3d 376, 385 n.11 (3d
Cir. 1999) (mootness); Taylor Inv., Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1290 (3d
Cir. 1993) (ripeness); see also 13B CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE
AND PROCEDURE §§ 3531.15, 3532.7 (3d ed. 2008).  Defendants' motion to dismiss
does not explicitly invoke Rule 12(b)(1), but the court will construe the standing,
ripeness, and mootness arguments as arising under Rule 12(b)(1).  In the instant
matter, the 12(b)(1) standard is functionally identical to that which the court must
apply under Rule 12(b)(6).  Because defendants mount a facial attack to the
justiciability of the plaintiffs' claims, the court must treat the allegations of the
complaint as true and afford plaintiffs the favorable inferences drawn therefrom.
See infra Part II.  The central difference under 12(b)(1) is that plaintiffs bear the
burden of proof, see infra Part II, but the plaintiff always bears the burden to prove
that his or her claim is justiciable, see infra Part III.  Thus, the distinction between
the Rule 12(b) sub-sections is purely academic in this context.  See, e.g., Samsung
Elecs. Co. v. On Semiconductor Corp., 541 F. Supp. 2d 645, 648 (D. Del. 2008) ("In
reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule
12(b)(6) apply.").

1991) ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.").

Motions under Rule 12(b)(1) may take one of two forms. A "facial" attack "contests the sufficiency of the pleadings." <u>Common Cause of Pa. v. Pennsylvania</u>, --- F.3d ---, 2009 WL 467171, at *4-5 (3d Cir. Feb. 26, 2009) (quoting <u>Taliaferro</u>, 458 F.3d at 188). The court assumes the veracity of the allegations in the complaint but must examine the pleadings to ascertain whether they present an action within the court's jurisdiction. <u>United States ex rel. Atkinson v. Pa. Shipbuilding Co.</u>, 473 F.3d 506, 514 (3d Cir. 2007). The court should grant such a motion only if it appears with certainty that assertion of jurisdiction would be improper. <u>Empire Kosher Poultry, Inc. v. United Food & Commercial Workers Health & Welfare Fund of Ne. Pa.</u>, 285 F. Supp. 2d 573, 577 (M.D. Pa. 2003); <u>see also</u> <u>Kehr Packages</u>, 926 F.2d at 1408-09. If the complaint is merely deficient as pleaded, the court should grant leave to amend before dismissal with prejudice. <u>See</u> <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000).

In contrast, a "factual" attack argues that, although the pleadings facially satisfy jurisdictional prerequisites, one or more of the allegations is untrue, rendering the controversy outside of the court's jurisdiction. <u>Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc.</u>, 227 F.3d 62, 69 (3d Cir. 2000); <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977). In such circumstances, the court is both authorized and required to evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue.

<u>Mortensen</u>, 549 F.2d at 891; <u>see also</u> <u>Atkinson</u>, 473 F.3d at 514.  In the motion *sub judice*, defendants present a facial attack on the court's subject matter jurisdiction; the court will analyze the justiciability claims accordingly.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); <u>see also</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  <u>See</u> Fed. R. Civ. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); <u>Twombly</u>, 550 U.S. at 555 (requiring plaintiffs to allege

13

facts sufficient to "raise a right to relief above the speculative level"); Victaulic Co.
v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007).  Thus, courts should not dismiss a
complaint for failure to state a claim if it contains "enough factual matter (taken as
true) to suggest the required element.  This does not impose a probability
requirement at the pleading stage, but instead simply calls for enough facts to raise
a reasonable expectation that discovery will reveal evidence of the necessary
element."  Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).  Under this
liberal pleading standard, courts should generally grant plaintiffs leave to amend
their claims before dismissing a complaint that is merely deficient.  See Grayson v.
Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d
113, 116-17 (3d Cir. 2000).

**III.**     **Discussion**

   **A.**     **Justiciability**

   Article III of the Constitution "limits the 'judicial power' to the resolution of
'cases' and 'controversies,'" McConnell v. Fed. Elec. Comm'n, 540 U.S. 93, 225
(2003), the existence of which "is a prerequisite to all federal actions, including
those for declaratory or injunctive relief," Peachlum v. City of York, 333 F.3d 429,
433 (3d Cir. 2003).  The case or controversy requirement ensures that the judiciary's
function is confined to "redress[ing] or prevent[ing] actual or imminently
threatened injury to persons caused by private or official violation of law."
Summers v. Earth Island Inst., --- U.S. ---, 129 S. Ct. 1142, 1148 (2009).  In fact, the
Supreme Court has declared that "[n]o principle is more fundamental to the

14

judiciary's proper role in our system of government than the constitutional limitation on federal-court jurisdiction to actual cases or controversies." Hein v. Freedom from Religion Found., Inc., 551 U.S. 587, 127 S. Ct. 2553, 2562 (2007). The case or controversy requirement mandates that: (1) the plaintiff has standing to bring the action and (2) the plaintiff's claim is ripe for adjudication and (3) the claim does not suffer from mootness. Defendants contend that the allegations raised by plaintiffs lack all three elements of justiciability. The court will address each doctrine in turn.

### 1.   **Standing**

Article III standing requirements are well established, and require a plaintiff to prove: (1) injury in fact, (2) a causal connection between the injury and the challenged action, and (3) a likelihood that the injury is redressable by a favorable judicial decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Pa. Psychiatric Soc'y v. Green Spring Health Servs., 280 F.3d 278, 288 n.8 (3d Cir. 2002). A plaintiff "invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." Lujan, 504 U.S. at 561; see also Summers, --- U.S. ---, 129 S. Ct. at 1149 (stating that the plaintiff "bears the burden of showing that he has standing for each type of relief sought"). However, "at the pleading stage, general factual allegations of injury resulting from defendants' conduct may suffice," for on a motion to dismiss,

the court presumes "that general allegations embrace those specific facts that are necessary to support the claim."  Maio v. Aetna, Inc., 221 F.3d 472, 500 (3d Cir. 2000) (quoting Lujan, 504 U.S. at 561).

A plaintiff seeking injunctive relief "must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."  Summers, --- U.S. ---, 129 S. Ct. at 1149 (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)); City of Los Angeles v. Lyons, 461 U.S. 95, 112 (1983) (declining to relax the standing requirement for plaintiffs seeking prospective relief).  Relatedly, a party requesting a declaratory judgment must meet the constitutional standing requirements, "but need not have suffered the 'full harm expected.'"  Khodara Envtl., Inc. v. Blakely, 376 F.3d 187, 193 (3d Cir. 2004) (quoting The St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands, 218 F.3d 232, 240 (3d Cir. 2000)); see also Lyons, 461 U.S. at 104 (dismissing declaratory action for lack of standing when plaintiff was unable to demonstrate "he may again be subject to [the challenged illegal action]").

In the First Amendment context, courts have eased traditional standing requirements to permit both potential speakers and potential recipients of speech to assert claims.  See Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 756 (1976); Pa. Family Inst., Inc. v. Black, 489 F.3d 156, 165 (3d

Cir. 2007).  The rights of potential recipients of speech, however, are wholly derived from the rights of the speaker.  In <u>Virginia State Board</u>, the Supreme Court opined: "Freedom of speech presupposes a willing speaker.  But where a speaker exists . . . the protection afforded is to the communication, to its source and to its recipients both."  425 U.S. at 756; <u>see also</u> <u>Black</u>, 489 F.3d at 165 ("A precondition of asserting this 'right to receive,' however, is the existence of a 'willing speaker.'").  Standing concerns underlie the "willing speaker" requirement, which exists not "to tie the third party's interests to those of the speaker, but to ensure that there is an injury in fact."  <u>United States v. Wecht</u>, 484 F.3d 194, 203 (3d Cir. 2007).  Consequently, "where one enjoys a right to speak, others hold a 'reciprocal right to receive' that speech, which 'may be asserted' in court."  <u>Black</u>, 489 F.3d at 165 (quoting <u>Va. State Bd.</u>, 425 U.S. at 757).

In order to maintain a "right to listen" claim, the plaintiff must clearly establish that a willing speaker exists.  <u>Black</u>, 489 F.3d at 166.  Absent such proof, a court must dismiss the claim for lack of standing.  <u>Id.</u>  The Third Circuit recently explained a plaintiff's burden in the following manner:

> [I]f there is no infringement claimed by a speaker—that is, someone who is willing to state that his rights were infringed upon, or that his exercise of rights was chilled by [the regulation in question,] there can be no violation of the right to listen.  In determining standing, the right to listen depends entirely on the infringement on the rights of a willing speaker.

<u>Id.</u> at 166.  A speaker is willing if he or she would have spoken but for the challenged speech regulation.  <u>Id.</u>

Plaintiffs in the instant matter allege that Canon 7B(1)(c) abridges their right to collect and distribute information—an assertion that clearly invokes the right to listen. Additionally, plaintiffs argue that the canon directly violates their right to speak by infringing the ability to criticize candidates for judicial office. This "right to criticize" claim is merely a restyled right to listen contention, for the alleged abridgement occurs only because the candidates in question refrain from answering plaintiffs' questionnaire.[11] The court will thus focus its analysis on plaintiffs' right to listen to the speech of judicial office-seekers.

Plaintiffs point to the statements of six judicial candidates—reproduced supra—as evidence that Canon 7B(1)(c) impermissibly obstructs the speech of willing speakers. Four of the candidates specifically reference Canon 7 to justify their refusal to reply to plaintiffs' questionnaire. Although such evidence may establish the existence of willing speakers in early 2007, it is insufficient to do so in the present. The canon to which these four judicial candidates refer no longer

---

[11] Plaintiffs claim that they "have the same standing as a judicial candidate to directly challenge the constitutionality of the canon" because "the challenged canon muddies, and therefore impairs, an otherwise clear and concise political argument against judicial candidates who refuse[] to answer questions on issues during a campaign election." (Doc. 44 at 16.) Plaintiffs cite two cases that purportedly recognize a citizen's right to "receive information that is independent of [a] judicial candidate's right to speak and express their opinions." Bader, 361 F. Supp. 2d at 1031; Wolnitzek, 345 F. Supp. 2d at 685. However, the prerequisite for the plaintiffs' "independent right" in these cases was the existence of a willing speaker. Plaintiffs certainly cannot contend that they possess some right to coerce speech from an unwilling candidate. Therefore, to the extent plaintiffs are asserting a First Amendment right to receive speech irrespective of whether a willing speaker exists, their assertion is without merit.

exists and the language currently embodied in Canon 7B(1)(c) is significantly more narrow than it was when plaintiffs distributed their questionnaire.[12]  Four of plaintiffs' respondents also cite the "appears to commit" language as justification for their silence; this language has subsequently been removed from Canon 7B(1)(c) by the Pennsylvania Supreme Court.[13]  Plaintiffs present no evidence that but for the *present-day* Canon, judicial candidates would be willing to speak.  See Black, 489 F.3d at 166 (requiring proof that a speaker "would have spoken" but for the

---

[12] In PFI II, the court held that "[t]he phrase 'or appear to commit' makes the [commits] clause unconstitutionally vague by allowing the unpredictable opinions of third parties to determine whether a candidate has violated the clause; deleting that phrase saves the clause from unconstitutionality by subjecting the clause to an objective 'commitment' standard." PFI II, 521 F. Supp. 2d at 380.  This court not only finds the reasoning of PFI II persuasive, but concurs with its analysis regarding the effect of the "or appear to commit" clause.  As a result, the court finds that the version of Canon 7B(1)(c) invoked by the judicial candidates responding to plaintiffs' questionnaire in early 2007 is materially distinct from the canon in its present form.

[13] Several of the judicial candidates' responses seem to indicate that their chief concern lies in the *appearance* or perception that may occur as a result of a substantive reply.  For example, Lucy Longo noted that "the spirit of the Code of Judicial Conduct also prohibits a candidate from expressing an opinion which would lead to *speculation*, or the *appearance*, that the candidate has formed any opinion before engaging in the full judicial process." (Doc. 41 ¶ 48 (emphasis added)).  Cindy Dunlap Hinkle stated that "[a]ny answer I may give to the specific questions posed may lead to *speculation* or the *appearance* that I have a pre-formed opinion on such matters." (Id. ¶ 50 (emphasis added)).  Debra Todd specifically recognized that she possessed a First Amendment right to speak, but declined to do so because "this would give the *impression* that I am pre-judging cases which may come before the Court." (Id. ¶ 53 (emphasis added)).  These responses reflect anxiety regarding "the unpredictable opinions of third parties," see PFI II, 521 F. Supp. 2d at 380, who may erroneously interpret a response as appearing to commit the candidate to a legal position.  Removal of the "appear to commit" language may therefore nullify these candidates' concerns.  A new series of questionnaires would appear to be the most logical and proper test of the amended canon.

19

challenged speech regulation).  Rather, their evidence indicates that certain candidates may have been willing to speak but for an *outdated* Canon.  This evidence is insufficient.  Plaintiffs cannot satisfy the standing requirement for prospective relief by proffering evidence that a now-nonexistent regulation obstructed speech.  Absent indicia of a prospective harm, plaintiffs lack a cognizable injury in fact.  See Summers, --- U.S. ---, 129 S. Ct. at 1149; Lyons, 461 U.S. at 112.  The court will thus dismiss the claims requesting both injunctive and declaratory relief for want of Article III standing.

With respect to the claims seeking compensatory relief, plaintiffs' evidence is sufficient to satisfy the standing requirement.  Under the 2007 version of Canon 7B(1)(c), plaintiffs have demonstrated that several judicial candidates possessed a willingness to speak but for the canon.  Multiple candidates specifically cite the canon or its language and one—Gary Gilman—references provision 7B(1)(c) in particular.  (See Doc. 41 ¶¶ 48-53.)  Additionally, each candidate who cited the canon did so unprompted, see Black, 489 F.3d at 168 (finding causation more likely when candidates cite ethics provisions unprompted), and indicated that the canon prohibited their response, see id. at 167; see also N.D. Family Alliance, Inc. v. Bader, 361 F. Supp. 2d 1021, 1028-29 (D.N.D. 2005) (finding willing speaker when candidate indicated that the North Dakota Code of Judicial Conduct prevented his response); Family Trust Found. of Ky., Inc. v. Wolnitzek, 345 F. Supp. 2d 672, 680-82 (D. Ky. 2004) (finding willing speakers when candidates expressed desire to respond but for judicial canons).  It is true that some of the candidates may have withheld a

20

reply irrespective of Canon 7B(1)(c)'s existence, but five individual candidates

justified their silence by referencing Canon 7 or its "appear to commit" language.[14]

The court finds that this evidence adequately establishes the existence of a willing

speaker. Accordingly, plaintiffs have standing to seek compensatory relief for the

injuries suffered when judicial office-seekers refused to answer the questionnaires

in early 2007.

### 2.    Ripeness & Mootness

The doctrine of ripeness is designed to prevent a party from prematurely

litigating an action. Khodara, 376 F.3d at 196; Peachlum, 333 F.3d at 433. Ripeness

requires a "real, substantial controversy between parties having adverse legal

interests." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)

(quoting Ry. Mail Ass'n v. Corsi, 326 U.S. 88, 93 (1945)). The inquiry requires a

---

[14] The facts of the instant matter are distinct from those presented in Black, where candidates completed multiple choice questionnaires that did not permit an open-ended response. See Black, 489 F.3d at 160. Candidates queried in Black had the option to decline to answer each question, but doing so automatically correlated to an asterisked response indicating that the candidate believed Canon 7B(1)(c) prohibited his or her answer. Id. The Black court held that this type of pre-formulated answer was not particularly illuminating because "candidates for the judiciary may feel that announcing their views on legal issues would hinder their ability to effectively dispense justice once they are on the bench." Id. at 168-69. Black contrasted the multiple choice questionnaires with those allowing a self-generated reply. See id. at 168. In the latter scenario, "every single response . . . [is] specifically drafted by the responding judicial candidate." Id. (citing Bader and Wolnitzek). The reservations expressed by the candidates in the instant matter were entirely self-generated. Several specifically indicated that Canon 7B(1)(c) prohibited their answer. Even if some of these candidates were using the canon as a pretext to refrain from speaking, plaintiffs have come forth with sufficient evidence to establish the existence of at least one willing speaker for the purposes of Article III standing.

court to consider factors such as whether: (1) "the parties are in a 'sufficiently adversarial posture to be able to present their positions vigorously,'" (2) "the facts of the case are 'sufficiently developed to provide the court with enough information on which to decide the matter conclusively,'" and (3) "a party is 'genuinely aggrieved so as to avoid expenditure of judicial resources on matters which have caused harm to no one.'" Khodara, 376 F.3d at 196 (quoting Peachlum, 333 F.3d at 433-34). Speech regulations often pose special difficulties for parties wishing to a present a live controversy, advanced in a "clean-cut and concrete form," see Renne v. Geary, 501 U.S. 312, 322 (1991) (quoting Rescue Army v. Mun. Court of L.A., 331 U.S. 549, 584 (1947)). Therefore, First Amendment challenges require relaxation of the ripeness inquiry, for "unconstitutional statutes or ordinances tend to chill protected expression among those who forbear speaking because of the law's very existence." Peachlum, 333 F.3d at 435.

The mootness doctrine necessitates that a litigant maintain standing to prosecute his or her lawsuit throughout the duration of the litigation. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980); see also Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990). If at any point a claim ceases to "present[] a live case or controversy, the claim is moot and the federal court lacks jurisdiction to hear it." Nextel West Corp. v. Unity Twp., 282 F.3d 257, 261 (3d Cir. 2002). When a regulation is amended after litigation has commenced—and amendment eliminates those aspects of the regulation challenged by the suit—any claim for injunctive or declaratory relief becomes moot. See id. at 261-62 (collecting cases); see also

Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 216 (3d Cir. 2003) (quoting Powell v. McCormack, 395 U.S. 486, 517-18 (1969)); Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996).  The potential of compensatory relief typically avoids dismissal of a claim for mootness.  See, e.g., Donovan, 336 F.3d at 218 (finding that plaintiff's claims for damages and attorney's fees continued to present live controversy even if claims for declaratory and injunctive relief were moot); Jersey Cent. Power & Light Co. v. New Jersey, 772 F.2d 35, 41 (3d Cir. 1985) ("[T]he availability of damages or other monetary relief almost always avoids mootness.")

Plaintiffs' lack of standing requires the court to dismiss those claims seeking prospective relief, and renders further discussion thereof superfluous to the court's

disposition.[15]  Plaintiffs' claims seeking monetary relief, however, are ripe and not

moot.  Potts contends that he spent time and money creating the questionnaire that

was distributed by Democracy Rising.  Plaintiffs thereafter solicited the response of

numerous judicial candidates, some of whom ostensibly declined to answer because

of Canon 7B(1)(c).  These contentions concern an injury that allegedly transpired in

early 2007; the extent of the injury is unaffected by the canon's recent amendment.

Plaintiffs sufficiently allege that they had a right to listen to speech that was chilled,

see Peachlum, 333 F.3d at 434-35 (relaxing ripeness standard in the context of a

First Amendment challenge), and their request for damages allays mootness

concerns, see Donovan, 336 F.3d at 218; Jersey Cent., 772 F.2d at 41.  The court will

---

[15] Even if plaintiffs possessed standing to seek injunctive and declaratory
relief, the court would nonetheless dismiss these claims on ripeness grounds.
Plaintiffs present no evidence to suggest that the Pennsylvania courts or any other
Pennsylvania agency has interpreted the *current* "commits clause" to prohibit the
speech sought by plaintiffs' questionnaire.  In a previous challenge to the 2007
version of Canon 7B(1)(c), this court found a similar paucity of evidence dispositive
of the ripeness inquiry.  See Pa. Family Inst. v. Black, No. Civ. 1:05-CV-2172, 2005
WL 2931825, at *7 (M.D. Pa. Nov. 4, 2005) (distinguishing Wolnitzek and Bader and
stating that "the present record is devoid of any interpretation of the judicial
canons by Pennsylvania's courts, the Pennsylvania Judicial Conduct Board, or the
Pennsylvania Office of Disciplinary Counsel.  In sum, the facts of this case are not
sufficiently developed for this court to rule conclusively.").  The Third Circuit
affirmed this ruling on appeal, but noted that "had [the plaintiff] established the
existence of a willing speaker, the underlying challenge to the Canons and Rules
themselves as having a chilling effect on speech would have been ripe."  Black, 489
F.3d at 170.  In the instant matter, plaintiffs have not established the existence of a
willing speaker, nor have they presented any evidence indicating that relevant state
regulatory bodies interpret the current canon in a way that violates the First
Amendment.  Consequently, the facts of the case are undeveloped and the court has
essentially no information upon which to decide the matter conclusively.  See
Khodara, 376 F.3d at 196.

therefore deny defendants' motion to dismiss the claims for compensatory relief on the grounds that they are not ripe or moot.

**B.    Claims Under 42 U.S.C. § 1983**

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law committed by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id.  Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of other federal laws.  Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kopec v. Tate, 361 F.3d 772, 775-76 (3d Cir. 2004).  To establish a claim under this section, the plaintiff must show the deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

In the action *sub judice*, plaintiffs allege the abridgement of their First Amendment right to listen.  As discussed supra, plaintiffs have standing to assert claims seeking compensatory relief only—specifically, that the 2007 version of Canon 7B(1)(c) was unconstitutional and that it effected an injury upon plaintiffs. Plaintiffs seek monetary relief against each defendant in his or her official and

individual capacity.  Defendants contend that such claims are barred by theories of sovereign and qualified immunity.  The court will assess these arguments *seriatim*.

### 1.     Eleventh Amendment Sovereign Immunity

The Eleventh Amendment precludes private federal litigation against a state and its agencies.[16]  Hans v. Louisiana, 134 U.S. 1, 15-16 (1890); see also Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Lombardo v. Pennsylvania, 540 F.3d 190, 194-95 (3d Cir. 2008).  This is a jurisdictional bar subject to only two exceptions: (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment, or (2) a state may waive its sovereign immunity by consenting to suit.  Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); Koslow v. Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002).  It is well settled that Congress had no intention to abrogate the states' sovereign immunity by enacting § 1983.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989).  Furthermore, Pennsylvania has unequivocally withheld its consent to such suits.  See 42 PA. CONS. STAT. § 8521(b); see also Lombardo, 540 F.3d at 196 n.3; Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981).

---

[16] The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.

In the instant matter, defendants represent members of the Pennsylvania

Judicial Conduct Board and the Pennsylvania Office of Disciplinary Counsel.

Under the Pennsylvania Constitution, all state courts and many agencies within the

judicial branch are part of a unified judicial system governed pursuant to the

general supervisory and administrative authority vested in the Pennsylvania

Supreme Court.  See PA. CONST. art. V, §§ 1, 2, 10; see also Callahan v. City of Phila.,

207 F.3d 668, 672 (3d Cir. 2000); Ludwig v. Berks County, Civ. A. No. 07-2127, 2007

WL 2463306, at *2 (E.D. Pa. Aug. 28, 2007).  The Pennsylvania Supreme Court has

explicitly held that the Judicial Conduct Board is an agency contained within the

unified judicial system.  See Commonwealth ex rel. Judicial Conduct Bd. v. Griffin,

918 A.2d 87, 94-95 (Pa. 2007) (interpreting provisions of PA. CONST. art. V, § 18).  In

addition, the Disciplinary Board of the Supreme Court of Pennsylvania—of which

the Office of Disciplinary Counsel is a part—is encompassed within the unified

judicial system.  See Law Office of Christopher S. Lucas & Assocs. v. Disciplinary

Bd. of the Supreme Court, 320 F. Supp. 2d 291, 295 (M.D. Pa. 2004), aff'd, 128 F.

App'x 235 (3d Cir. 2005).  Both agencies, as well as officials thereof, are thus

immune from suit under the Eleventh Amendment principles described above.  See

Benn v. First Judicial Dist., 426 F.3d 233, 240-41 (3d Cir. 2005) (holding that when an

arm of the unified judicial system is sued, the Commonwealth is the real party in

interest); see also Will, 491 U.S. at 71 ("[A] suit against a state official in his or her

official capacity is not a suit against the official but rather is a suit against the

official's office.").

27

Plaintiffs' official capacity claims represent nothing more than an attempt to bring suit against agencies of the state.  As such, they are jurisdictionally barred by the Eleventh Amendment and must be dismissed.  Leave to amend will be denied as futile.  See Grayson, 293 F.3d at 108 (observing that the district court may exercise its discretion to dismiss a claim with prejudice when leave to amend would be futile).

### 2.   Individual Liability & Qualified Immunity

Qualified immunity protects a state actor who has committed constitutional violations if the plaintiff's rights were not "clearly established" when the individual acted.  Pearson v. Callahan, --- U.S. ---, 129 S. Ct. 808, 815 (2009).  The state actor is amenable to suit only if a reasonable person would have known that the state actor's conduct infringed the plaintiff's constitutional rights.  Id.; see also Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007).  No liability will attach if a reasonable state

actor could have believed that the challenged conduct was lawful.[17] <u>Springer v.</u>

<u>Henry</u>, 435 F.3d 268, 280 (3d Cir. 2006) ("[T]he court should ask whether the

[official] acted reasonably under settled law in the circumstances.") (quoting

<u>Hunter v. Bryant</u>, 502 U.S. 224, 228 (1991) (second alteration in original)).  The

doctrine provides officials "immunity from suit rather than a mere defense to

liability," <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985), and "ensure[s] that

'insubstantial claims' against government officials will be resolved prior to

discovery," <u>Pearson</u>, --- U.S. ---, 129 S. Ct. at 815 (quoting <u>Anderson v. Creighton</u>,

483 U.S. 635, 640 n.2 (1987)).

Plaintiffs argue that "defendants are not entitled to a qualified immunity

defense because the challenged canon in force at the time of plaintiffs' injury

violated clearly established constitutional rights announced in [<u>Republican Party of</u>

<u>Minnesota v.</u>] <u>White</u>."  (Doc. 44 at 31.)  According to plaintiffs, the 2007 version of

---

[17] In <u>Saucier v. Katz</u>, the Supreme Court required lower courts to conduct a two-step qualified immunity inquiry.  <u>See</u> 533 U.S. 194, 201-02 (2001).  The first step required the court to determine whether "the facts alleged show the [official's] conduct violated a constitutional right[.]"  <u>Id.</u> at 202.  "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step [was] to ask whether the right was clearly established."  <u>Id.</u>  The Supreme Court recently overruled this rigid inquiry in <u>Pearson v. Callahan</u>, and held that the "mandatory, two-step rule for resolving all qualified immunity claims should not be retained." --- U.S. ---, 129 S. Ct. at 817.  The new rule allows lower courts to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  <u>Id.</u>  The court finds that, in the case *sub judice*, it is more prudent to initially focus upon the "clearly established" prong of the inquiry.  Because analysis of this prong is dispositive of instant matter, it is unnecessary to ask whether plaintiffs have demonstrated that the canon violated a constitutional right.

Canon 7B(1)(c) was conspicuously antithetical to the First Amendment.  Plaintiffs

contend that defendants, who were responsible for enforcing the canon, are thus

accountable for the constitutional harms inflicted thereby.  This contention is

without merit.

A reasonable person would have concluded that the 2007 version of Canon

7B(1)(c) was constitutional.  The ruling in Republican Party of Minnesota v. White

held invalidated a judicial canon that read: "a candidate for a judicial office,

including an incumbent judge, shall not *announce* his or her views on disputed legal

or political issues."  536 U.S. 765, 768 (2002) (internal quotation marks omitted)

(emphasis added).  Shortly thereafter, the Pennsylvania Supreme Court issued an

order revising Canon 7B(1)(c) so that it would comport with the requirements of the

First Amendment.[18]  See In re Amendment of Canon 7B(1)(c) of the Code of Judicial

Conduct, 2002 Pa. LEXIS 3194, at *1 (Pa. Nov. 21, 2002).  The amended canon was

challenged on First Amendment grounds in 2007 in the Eastern District of

Pennsylvania, and the court found that the narrowly-interpreted canon passed

constitutional muster.  See PFI II, 521 F. Supp. 2d 351.  Thus, two judicial tribunals

---

[18] The pre-White language of Canon 7B(1)(c) read: "A candidate . . . should
not . . . *announce his views on disputed legal issues*, [or] make statements that
commit or appear to commit the candidate with respect to cases, controversies, or
issues . . . ."  See In re Amendment of Canon 7B(1)(c) of the Code of Judicial
Conduct, 2002 Pa. LEXIS 3194, at *1 (Pa. Nov. 21, 2002) (emphasis added).  After
the ruling in White, the Pennsylvania Supreme Court deleted the Code's
"announcement" clause.  See id.  In the commentary appended to its opinion, the
court implicitly acknowledged that the amendment was intended to correct the
constitutional deficiency identified by White.  See id.

assessed the legality of Canon 7B(1)(c) and determined that it passed constitutional scrutiny. Defendants did not act unreasonably in arriving at a like-minded conclusion. The court finds that in 2007 plaintiffs' rights were not clearly established. Therefore, the court concludes that defendants are properly shielded by the doctrine of qualified immunity. The motion to dismiss plaintiffs' individual capacity claims requesting compensatory relief will be granted, and leave to amend will be denied as futile. See Grayson, 293 F.3d at 108 (observing that the district court may exercise its discretion to dismiss a claim with prejudice when leave to amend would be futile).

## IV.   Conclusion

For the foregoing reasons, the court will dismiss the First Amendment claims levied against Canon 7B(1)(c) of the Pennsylvania Code of Judicial Conduct. Plaintiffs lack standing to seek declaratory or injunctive relief, and the allegations requesting compensatory relief are barred by the doctrines of sovereign and qualified immunity. Leave to amend is futile and will therefore be denied.

An appropriate order follows.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:        March 20, 2009

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEMOCRACY RISING PA and** | : | **CIVIL ACTION NO. 1:07-CV-0860** |
| **TIM POTTS,** | : | |
| | : | **(Judge Conner)** |
| **Plaintiffs** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN R. CELLUCI, CHARLES A.** | : | |
| **CLEMENT, JR., CHARLES J.** | : | |
| **CUNNINGHAM, III, CECILIA** | : | |
| **GRIFFEN GOLDEN, PATRICK** | : | |
| **JUDGE, EDWARD R. KLETT, G.** | : | |
| **CRAIG LORD, CHARLENE R.** | : | |
| **MCABEE, CYNTHIA N.** | : | |
| **MCCORMICK, JACK A. PANNELLA,** | : | |
| **CAROLYN W. RUDNITSKY, JAMES** | : | |
| **R. WEAVER, and PAUL J. KILLION,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 20th day of March, 2009, upon consideration of defendants'

motion (Doc. 42) to dismiss, and for the reasons set forth in the accompanying

memorandum, it is hereby ORDERED that:

1.  The motion (Doc. 42) to dismiss is GRANTED. All claims against
    defendants are DISMISSED. Leave to amend is denied as futile.
    Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

2.  The Clerk of Court is directed to CLOSE this case.


 S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge